UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

HOWARD AKRIDGE, *individually and on behalf of all others similarly situated*,

                          Plaintiff,

– against –

WHOLE FOODS MARKET GROUP, INC.,

                          Defendant.

**OPINION & ORDER**

20 Civ. 10900 (ER)

RAMOS, D.J.:

      Howard Akridge brings this putative class action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), against Whole Foods Market Group, Inc. ("Whole Foods")[1], alleging that Whole Foods has engaged in a pattern of mislabeling certain prepared foods and thereby failing to identify the presence of allergens.[2] Doc. 16. Akridge seeks injunctive relief and monetary damages for violations of Sections 349 and 350 of the New York General Business Law ("GBL"), as well as related claims for negligent misrepresentation, fraud, breach of warranty, and unjust enrichment. Before the Court is Whole Foods' motion to dismiss the First Amended Complaint ("FAC"), or in the alternative, for a more definite statement. Doc. 22. For the reasons set forth below, the motion to dismiss is GRANTED.

    **I.**    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

      The following facts are based on the allegations in the FAC, which the Court accepts as true for purposes of the instant motion. *See, e.g.*, *Connecticut v. Physicians Health Servs. Of Conn., Inc.*, 287 F.3d 110, 114 (2d Cir. 2002); *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

---

[1] Defendant's moving papers explain that Whole Foods Market Group, Inc., owns and operates the Whole Foods Market stores in New York and several other states, but it does not own or operate all Whole Foods Market stores around the United States. Doc. 23 at 3–4. The Court will refer to Defendant here as "Whole Foods."

[2] Unless otherwise noted, citations to "¶ _" refer to Akridge's First Amended Complaint ("FAC"), Doc. 16.

A. **Factual Background**

Whole Foods operates nearly 500 stores across North America that sell natural and organic foods, including a range of products in the prepared foods sections of its stores and fresh packaged goods sold under its 365 Everyday Value Brand. ¶¶ 1–2. These products include soups, cheeses, bakery products, fish, and prepared entrees. ¶ 3.

1. *FDA Warning Letter*

The U.S. Food and Drug Administration ("FDA" or "the agency") issued Whole Foods CEO John Mackey a warning letter on December 16, 2020, as part of the agency's "ongoing efforts to address undeclared allergens as the leading cause of food recalls in the United States[.]" (the "FDA Warning Letter").[3] ¶¶ 10–12; Doc. 24-1. The FDA Warning Letter explains that Whole Foods has "engaged in a pattern of receiving and offering for sale misbranded food products," and that from October 2019 to November 2020, the company "recalled 32 food products due to undeclared allergen(s)." Doc. 24-1 at 1. Whole Foods had a similar pattern of recalling foods that contained undeclared allergens in previous years. *Id.* The FDA Warning Letter further states that the products at issue were misbranded within the meaning of § 403(w) of the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, and were therefore in violation of the FDCA's requirement that finished product labels declare all major food allergens present in the products. *Id.* The FDA Warning Letter gave several examples of mislabeled products that had been recalled, including: a prepared minestrone soup product, packaged in plastic deli-style containers or clear plastic bags, for failure to list milk as an ingredient; raspberry cheesecake Italian gelato, packaged in a clear plastic pint container, for failure to list eggs; white Parker House rolls, packaged in a 12 oz. plastic bag, for failure to list milk and eggs;

---

[3] The Court takes judicial notice of the FDA Warning Letter, which is incorporated by reference in the FAC. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," as well as documents that are "integral to the complaint." (internal quotation marks and citations omitted)). The FAC includes a link to the FDA Warning Letter, along with another link to an FDA webpage with information about food allergies. ¶¶ 10 n.1, 12 n.2. The FDA Warning Letter is available at https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/whole-foods-market-610862-12162020 and at Doc. 24-1.

2

Chantilly Key Lime Tartlets, packaged in 1 oz. plastic clamshell containers, for failure to list almond flour; and various artisan cheeses, for failure to list eggs. *Id.* at 2–3. The FDA Warning Letter concluded that these violations were not "an all-inclusive list," and that it is Whole Foods' responsibility to ensure that it complies with all requirements of federal law and regulations. *Id.* at 3.

    2. *Akridge's Claims*

Consumers with food allergies "diligently check a product's ingredient list to confirm the absence" of allergens in the food, because food allergies can range in severity from mild symptoms to "sever [sic], life threatening symptoms, often called anaphylaxis, which may involve fatal respiratory problems and shock." ¶¶ 6–7. Federal and state regulations require that the presence of common allergens in foods, including milk, eggs, fish, crustacean shellfish, tree nuts, wheat, peanuts, and soybeans, be disclosed immediately after the ingredient list, preceded by the word "Contains." ¶¶ 8–9.

Akridge alleges that Whole Foods has a longstanding pattern of violating these requirements and failing to properly disclose the presence of allergens in prepared foods and certain packaged goods sold under its private label brand.[4] ¶¶ 10–12, 31–36. Since 2017, there have been at least 33 recalls of Whole Foods items sold in its New York stores due to undeclared soy, egg, milk, peanuts and tree nuts, and other allergens. ¶¶ 13–14. In addition to the recalled foods listed in the FDA Warning Letter, Akridge alleges that, in July 2018, Whole Foods issued a recall on cakes prepared in their on-premises bakeries for failure to list soy. ¶¶ 15–21. Whole Foods also recalled cranberry biscotti, for possible failure to list pistachios, and beef meatballs with marinara sauce, for failure to list parmesan cheese. ¶¶ 22–24. According to experts not identified in the FAC, the "publicly announced recalls are often described as the 'tip' of an iceberg," and there may be many other items that should have been, but were not, subject to

---

[4] Akridge cites to a 2007 *Chicago Tribune* news article describing how Whole Foods avoided disclosing potential cross-contamination with allergens. This practice led to "severe allergic reactions in unwitting children," and the FDA "crack[ed] down on Whole Foods' practices in 2007." ¶¶ 31–36.

recall. ¶¶ 25–26. Akridge alleges that Whole Foods' recalls "have been characterized as 'systemic.'" ¶ 28. He further alleges that the mislabeling is not unique to any particular Whole Foods store or region, and that Whole Foods has reportedly failed to update its computer labeling software, leading to the mislabeling. ¶¶ 29–30.

Akridge, who resides in Manhattan, alleges that between October 2018 and November 2020, he "purchased Products[5] of the type which have been identified as those for which Defendant failed to properly disclose the required food allergens," at one or more Whole Foods stores, including the store located on West 125th St. in Manhattan. ¶¶ 53, 55, 62. The items he purchased "included the prepared food products, which included cakes, dips, cheese, and/or other foods, where it has been confirmed Defendant failed to disclose the presence of food allergens." ¶ 64. Notably, the FAC does not allege any specific mislabeled food product that Akridge purchased, and he admits in his memorandum of law in opposition to the instant motion that it is merely "likely" that he purchased any mislabeled products. Doc. 25 at 5. The FAC alleges that Akridge and other consumers "are allergic to foods [containing] the major allergens or otherwise seek to avoid those allergens," ¶ 40, but does not state which allergen(s) Akridge is allergic to or otherwise seeks to avoid. Akridge alleges that he shopped at Whole Foods stores "because he expected they would hold themselves to the higher standard they have set for themselves, through [their] commitment to eliminating certain harmful and synthetic ingredients," and that he relied on Whole Foods' reputation and on the "contains" statements on its products. ¶¶ 41, 56, 58. He claims that by failing to properly verify the potential presence of allergens in prepared foods, Whole Foods is able to sell those products at higher prices. ¶¶ 43, 45.

Had Akridge and the putative class members known about Whole Foods' practices, they would not have bought as much, or any, of the prepared foods and would either have paid less for the products or would not have bought them at all, because they would not have paid higher

---

[5] The FAC does not define "Products."

prices for products that fail to disclose the presence of allergens.[6] ¶¶ 44, 46, 58–59. Akridge is "reluctant to continue his purchases from Whole Foods' prepared foods sections because he does not want to take a chance that the company has failed to modify its practices," but once Whole Foods rectifies those practices, he "will no longer feel reluctant" to purchase such products. ¶¶ 60–61.

Akridge intends to seek injunctive relief under Rule 23(b) on behalf of a proposed class of all purchasers of the products in New York during the applicable statutes of limitations. ¶¶ 65–66.

### B.   Procedural History

Akridge brought this action on December 23, 2020. Doc. 1. On July 1, 2021, after Whole Foods requested a pre-motion conference to bring a motion to dismiss, Akridge filed the FAC. Docs. 11, 12, 16. On August 26, 2021, Whole Foods moved to dismiss the FAC, or in the alternative, for a more definite statement. Doc. 22.

## II.   LEGAL STANDARD

### A.   Rule 12(b)(1)[7]

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subjection matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd,* 561 U.S. 247 (2010) (internal quotation marks and citation omitted). "Because standing is challenged on the basis of the pleadings, [the Court] accept[s] as true all material allegations of the complaint, and must

---

[6] The FAC implies that consumers with food allergies would purchase products they are allergic to if Whole Foods sold such products at a lower price.

[7] Although Whole Foods' moving papers cite Rule 12(b)(6), its argument that Akridge lacks Article III standing is properly construed as a motion to dismiss under Rule 12(b)(1). "An objection to standing is properly made on a Rule 12(b)(1) motion." *Tasini v. New York Times Co.*, 184 F. Supp. 2d 350, 354–55 (S.D.N.Y. 2002) (citing *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 88–89 (1998)); *see also Nicholas v. Trump*, 433 F. Supp. 3d 581, 586–87 (S.D.N.Y. 2020). The standard of review for a 12(b)(1) motion is "substantively identical" to the standard for a Rule 12(b)(6) motion. *See Alphas Co. of New York Inc. v. Hunts Point Terminal Produce Coop, Inc.*, No. 14 Civ. 145 (ALC), 2017 WL 1929506, at *3 n.2 (S.D.N.Y. May 9, 2017) (citing *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)).

construe the complaint in favor of the [plaintiff]." *Physicians Health Servs.*, 287 F.3d at 114 (internal quotation marks and citation omitted). However, the burden remains on the plaintiff, as the party invoking federal jurisdiction, to establish its standing as the proper party to bring an action. *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 89 (2d Cir. 2009) (citation omitted); *see also FW/PBS, Inc. v. City Of Dallas*, 493 U.S. 215, 231 (1990) ("It is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record," and if the plaintiff fails to "clearly [ ] allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute," he does not have standing under Article III. (internal quotation marks and citation omitted)).

Where, as here, a party also seeks dismissal on Rule 12(b)(6) grounds, the Court must consider the Rule 12(b)(1) motion first, *Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.,* 820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011), *aff'd sub nom. Baldessarre ex rel. Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.,* 496 F. App'x. 131 (2d Cir. 2012), because "disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *Chambers v. Wright,* No. 05 Civ. 9915 (WHP), 2007 WL 4462181, at *2 (S.D.N.Y. Dec. 19, 2007) (quoting *Magee v. Nassau Cnty. Med. Ctr.,* 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)).

### B. Rule 12(b)(6)

Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Christie's Int'l, PLC*, 699 F.3d at 145. However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. If the plaintiff has not "nudged [the] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

### C. Rule 12(e)

Pursuant to Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Rule 12(e) only applies in certain circumstances and is distinct from a Rule 12(b)(6) motion, because "[a] 12(b)(6) motion is one made for a failure to state a claim, while a 12(e) motion is proper when a complaint pleads a viable legal theory, but is so unclear that the opposing party cannot respond to the complaint." *Pelman ex rel. Pelman v. McDonald's Corp.,* 396 F. Supp. 2d 439, 443 (S.D.N.Y. 2005) (quoting *Humpherys v. Nager,* 962 F. Supp. 347, 352–53 (E.D.N.Y. 1997)). "For a more definite statement to be warranted, the complaint must be so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 456 (E.D.N.Y. 2009) (internal quotation marks and citations omitted). "The rule is designed to remedy unintelligible pleadings, not to correct for lack of detail." *Id.* Although the decision to grant a motion for a more definite statement is within the discretion of the district court, "[s]uch motions are generally disfavored . . . and are not intended to substitute for the normal discovery process." *Vaden v. Lantz*, 459 F. Supp. 2d 149, 151 (D. Conn. 2006) (internal quotation marks and citation omitted); *see also Markovic v. New York City Sch. Const. Auth.*, No. 99 Civ. 10339 (AGS), 2000 WL 1290604, at *3 (S.D.N.Y. Sept. 13, 2000).

## III. DISCUSSION

### A. Article III Standing

To establish standing under Article III of the Constitution, a plaintiff must show "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). A plaintiff must have a "personal stake" in the case in order to have standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021); *see also John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (stating that the injury-in-fact requirement is "a low threshold," which "helps to ensure that the plaintiff has a personal stake in the outcome of the controversy[.]" (internal quotation marks and citations omitted)). Concrete injuries are "physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2206; *see also Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 63–64 (2d Cir. 2021). As the Supreme Court has explained, "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *TransUnion*, 141 S. Ct. at 2205 (internal quotation marks and citation omitted). "Article III standing requires a concrete injury even in the context of a statutory violation." *Harty v. W. Point Realty, Inc.*, 477 F. Supp. 3d 163, 167 (S.D.N.Y. 2020), *aff'd,* 28 F.4th 435 (2d Cir. 2022) (internal quotation marks and citation omitted). "[A] plaintiff seeking injunctive relief cannot rely only on past injury to satisfy the injury requirement but must show a likelihood of future harm." *Harty v. Simon Prop. Grp., L.P.*, 428 F. App'x 69, 71 (2d Cir. 2011) (summary order).

Moreover, in a putative class action, the named plaintiff must allege that he was personally injured by defendants' conduct. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005). To establish class standing, a plaintiff must show that (1) "he 'personally has suffered some actual . . . injury as a

8

result of the putatively illegal conduct of the defendant,' and (2) . . . such conduct implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 563 (S.D.N.Y. 2016) (quoting *NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012)).

Whole Foods challenges whether Akridge has established Article III standing because the FAC does not allege facts plausibly demonstrating that he actually purchased any of the products that were the subject of the FDA Warning Letter or that allegedly failed to disclose allergens. Doc. 23 at 8. Thus, Whole Foods mounts a facial challenge, based on the allegations of the complaint, to the Court's subject matter jurisdiction. [8] *See Harty*, 477 F. Supp. 3d at 167 (citing *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016)). Akridge responds, citing *Fink v. Time Warner Cable*, that the "surrounding context" is "crucial," and the Court should consider the FAC's allegations that Whole Foods' mislabeling of packaged foods represents a "systemic" problem, such that the recalled foods may represent only a portion of the mislabeled foods. Doc. 25 at 5 (citing 714 F.3d 739, 742 (2d Cir. 2013)). He therefore claims that the FAC alleges facts which, taken together, are sufficient to establish that "Plaintiff likely purchased products that lacked accurate allergen disclosure," and that he "sought to avoid allergens." *Id.*

---

[8] In *Carter*, the Second Circuit explained that "[a] Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." 822 F.3d at 56. When the motion is facial—based on the allegations of the complaint or the complaint and exhibits—"the plaintiff has no evidentiary burden," and the district court must determine whether the allegations in the pleadings "affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (internal quotation marks and citations omitted). In bringing a fact-based Rule 12(b)(1) motion, a defendant may "proffer[] evidence beyond the Pleading," and plaintiffs then "will need to come forward with evidence of their own to controvert that presented by the defendant if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems in the assertion of jurisdiction." *Id.* at 57 (internal quotation marks and citations omitted). Whole Foods appears to challenge the facts alleged in the FAC with its statement that "The identity of the specific products Plaintiff claims he purchased is both necessary to allege his claims and significant because most of the alleged recalls addressed in the FDA Warning letter related to products not sold in New York." Doc. 23 at 8. However, Whole Foods has not introduced evidence challenging the number of mislabeled products in its New York stores, and Akridge has not proffered any additional evidence, instead relying on the allegations in the FAC that mislabeled products were sold in New York stores. Doc. 25 at 5. Accordingly, the Court construes Whole Foods' motion as a facial challenge to subject matter jurisdiction and considers whether it has jurisdiction based solely on the allegations in the FAC.

The Court determines that Akridge's FAC must be dismissed for lack of standing because he has not alleged an injury in fact. The Court finds the recent decision in *Castillo v. Unilever United States, Inc.*, while not binding, to be persuasive. No. 20 Civ. 6786 (GF), 2022 WL 704809 (N.D. Ill. Mar. 9, 2022). In that case, plaintiffs brought a putative class action alleging that Unilever hair products contained a chemical preservative, DMDM hydantoin, which can cause adverse reactions including itchiness, rashes, and hair loss in people allergic to that preservative. *Id.* at *1. Plaintiffs alleged that they had in fact purchased and used the products containing DMD hydantoin, but did not allege that they were allergic to it or that they had suffered any adverse physical ingredients from using the hair products—only that they would not have purchased the hair products or would have paid less for them had they known the hair products contained that preservative. *Id.* The *Unilever* court found that under Supreme Court and Seventh Circuit precedent, the plaintiffs had Article III standing because they had alleged a financial injury from purchasing the products, but that they lacked standing for injunctive relief and that they had failed to state a claim. *Id.* at *3–6. Akridge, unlike the *Unilever* plaintiffs, does not specifically allege that he actually purchased products containing unidentified allergens.

Class action cases in this Circuit involving other consumer products brought by plaintiffs who purchased some, but not all, of the products they challenge are also instructive, although these decisions turn on class standing rather than Article III standing. *See NECA-IBEW Health & Welfare Fund*, 693 F.3d at 160; *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12 MD 2413 (RRM) (RLM), 2013 WL 4647512, at *10–11 (E.D.N.Y. Aug. 29, 2013). The majority view holds that a plaintiff who has purchased some of the products they challenge has class standing if the products are similar to other challenged products or implicate the same challenged course of conduct by the defendants. *See, e.g.*, *Buonasera*, 208 F. Supp. 3d at 562–63 (plaintiff, who brought a putative class action after purchasing two hair products that he alleged were misrepresented as natural, had sufficiently alleged class standing to challenge a wider range of unpurchased products, for purposes of the motion to dismiss stage (collecting cases)); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 541–42 (S.D.N.Y. 2013) (denying motion to dismiss

plaintiffs' claims relating to products they did not purchase, which were substantially similar to products they did purchase, and noting that "Courts are split as to whether plaintiffs have standing to assert claims relating to products they themselves did not purchase, but which are substantially similar to products they did purchase."); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *11–13 (finding that because plaintiffs had Article III standing, "they may press claims, on behalf of putative class members, arising out of products that the plaintiffs did not themselves purchase," and whether plaintiffs' injuries were sufficiently similar to putative class members' was a matter for a Rule 23 motion); *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 277 (E.D.N.Y. 2021) ("[T]o the extent class standing must be addressed at this stage, the [p]roducts (both purchased and unpurchased) are sufficiently similar to support plaintiff's class standing at this time."); *Gold v. Eva Naturals, Inc.,* No. 21 Civ. 2842 (GRB) (AYS), 2022 WL 566230, at *2 (E.D.N.Y. Feb. 16, 2022) (plaintiff, who had purchased one of the products allegedly falsely advertised as "natural," had standing at the motion to dismiss stage to represent class members who had purchased any of defendant's 25 skincare products); *cf. DiMuro v. Clinique Lab'ys, LLC*, 572 F. App'x 27, 29 (2d Cir. 2014) (summary order) (plaintiff who purchased three out of seven cosmetic products lacked class standing because the defendant "made different advertising claims for each product"); *Hart v. BHH, LLC*, No 15 Civ. 4804 (WHP), 2016 WL 2642228, at *4 (S.D.N.Y. May 5, 2016) ("The implicit lesson in *DiMuro* is that [*NECA-IBEW Health & Welfare Fund*] did not give plaintiffs—and their counsel—free reign to bring lawsuits regarding products they never purchased.  Here, as in *DiMuro*, claims brought by a purchaser of Pest Repellers would not raise 'nearly identical' concerns to the claims of a purchaser of Animal Repellers.").

       Fundamental to all of those decisions was that the plaintiff seeking to bring a class action had actually alleged that they had purchased at least one of the products challenged as falsely advertised.  As the *Frito-Lay* court stated, "It remains undisputed that plaintiffs lack Article III standing to assert claims arising out of products that they themselves did not purchase." 2013 WL 4647512, at *11.  Unlike the *Unilever* and class action plaintiffs described above, Akridge

11

has not met that threshold.  Accepting all material factual allegations in the FAC as true, Akridge has alleged only that he is either allergic to or seeks to avoid certain unspecified allergens, and that he purchased some prepared food products of the type that were recalled, and therefore he might have paid more than he otherwise would have for foods that did not disclose the presence of allergens.  ¶¶ 40, 44–46, 64.  Akridge does not plead that he actually purchased any of the foods that had been mislabeled or recalled.  While courts recognize that an allergic reaction to a product may constitute an injury, *see Cardinale v. Quorn Foods, Inc.*, No. 09 Civ. 1660 (JCH), 2010 WL 1332551, at *1 (D. Conn. Mar. 31, 2010) ("[Plaintiff] alleges that, on three separate occasions, she became violently ill as a result of consuming one of Quorn's frozen meatless food products," which did not disclose on their packaging the presence of certain allergenic fungal ingredients) and *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 735 (1st Cir. 2016) (plaintiff's anaphylactic reaction to an improper dose of medication was an injury), Akridge does not allege that he suffered an allergic reaction due to Whole Foods' mislabeled products.  Nor does he allege that he has an allergy or intolerance to eggs, milk, almonds, or any of the other allergens included in the mislabeled foods.  Akridge admits in his opposition that it is only "likely" he might have purchased mislabeled products.  Doc. 25 at 5.  Thus, he seems impermissibly to ask the Court to infer an injury for him.  However, "a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing." *Baur v. Veneman*, 352 F.3d 625, 636–37 (2d Cir. 2003): *see also Fac., Alumni, & Students Opposed to Racial Preferences v. New York Univ. L. Rev.*, No. 18 Civ. 9184 (ER), 2020 WL 1529311, at *6 n.5 (S.D.N.Y. Mar. 31, 2020), *aff'd sub nom. Fac. v. New York Univ.*, 11 F.4th 68 (2d Cir. 2021) ("[Plaintiff] cannot rely solely on conclusory allegations of injury . . ., even at the pleading stage.").

       Finally, the Court considers the Second Circuit's decision in *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732 (2d Cir. 2017), in which the plaintiff alleged that Whole Foods had a pattern of mislabeling its products, similar to Akridge's claims here.  The Second Circuit reversed the lower court's ruling that the plaintiff lacked standing, holding that an alleged pattern

by Whole Foods of improperly weighing packaged foods, and therefore overcharging consumers, combined with the plaintiff's allegation that he purchased pre-packaged cheese and cupcakes at Whole Foods stores approximately once a month, rendered plaintiff's contention that he had overpaid for those goods at least once sufficiently plausible to survive a Rule 12(b)(1) motion. 858 F.3d at 736–37.  The plaintiff had attached to his complaint a New York City Department of Consumer Affairs ("DCA") press release announcement "that 89% of Whole Foods' pre-packaged products tested . . . were mislabeled," and he specifically alleged that he purchased pre-packaged cheese and cupcakes on approximately a monthly basis. *Id.* at 736–37.  Moreover, as the *John* court noted, following the DCA's investigation, "Whole Foods . . . confirmed that cheese and cupcakes were among the pre-packaged products that the DCA alleged were mislabeled with overstated weights." *Id.* at 735.  The court therefore found that "it is plausible that John overpaid for at least one product," and thus "satisfie[d] the 'low threshold' required to plead injury in fact." *Id.* at 737–78.  The district court's conclusion that the plaintiff lacked standing because the complaint "failed adequately to allege that he *personally* overpaid for any specific purchase," was error, because the district court failed to draw all reasonable inferences in his favor. *Id.* at 737.  While the *John* case renders Whole Foods' motion to dismiss based on standing a closer call, that case is distinguishable.  First, the DCA report cited in that case stated that nearly 90% of Whole Foods' packaged foods sold in New York City stores were mislabeled with an inflated weight.  Here, the FDA Warning Letter does state that Whole Foods "engaged in a pattern" of mislabeling foods, but the letter is not specific to the New York City Whole Foods stores where Akridge shops and does not indicate what percentage of the packaged foods are mislabeled. *See* Doc. 24-1.  Second, the *John* plaintiff specifically alleged that he purchased "pre-packaged cheese and cupcakes approximately one or two times per month." *John*, 858 F.3d at 734.  That allegation is far more concrete than Akridge's allegation that he "purchased numerous [p]roducts . . . including[ing] the prepared food products, which included cakes, dips, cheeses, and/or other foods, where it has been confirmed Defendant failed to disclose the presence of food allergens," over the last six years. ¶¶ 62–64.  Akridge's claims therefore fail to

13

clear the low threshold required to establish an injury in fact and do not even constitute "general factual allegations of injury." *Hu v. City of New York*, 927 F.3d 81, 89 (2d Cir. 2019) (internal quotation marks and citation omitted).

Because the Court concludes that Akridge has not plausibly alleged standing, it lacks jurisdiction to consider Whole Foods' Rule 12(b)(6) motion on the merits. Nor does the Court reach Whole Foods' 12(e) motion for a more definite statement.

### B. Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure provides that the court should grant leave to amend "freely . . . when justice so requires." Fed. R. Civ. P. 15(a). The Second Circuit has noted that the rule is "applicable to dismissals for failure to plead an adequate basis for federal jurisdiction," and courts should grant leave to amend at least once as matter of course "[w]here the possibility exists that the defect can be cured and there is no prejudice to the defendant[.]" *Oliver Sch., Inc. v. Foley,* 930 F.2d 248, 252–53 (2d Cir. 1991) (citations omitted). Because it is possible that Akridge may be able to establish standing, the Court grants him leave to amend.

### IV. CONCLUSION

For the reasons discussed above, Whole Foods' motion to dismiss is GRANTED. Akridge may file any amended complaint by April 20, 2022. If he does not, the case will be closed.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 22.

It is SO ORDERED.

Dated: March 30, 2022
         New York, New York

                                                    EDGARDO RAMOS, U.S.D.J.